UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CARDELL BRIGHT | CIVIL ACTION |
| VERSUS | NO: 20-3232 |
| WILLY J. MARTIN, SHERIFF ST. JAMES PARISH | SECTION: "A" (1) |

## ORDER AND REASONS

The following motion is before the Court: **Motion for Summary Judgment (Rec. Doc. 70)** filed by the defendant, Willy J. Martin, Sheriff of St. James Parish. The plaintiff, Cardell Bright, opposes the motion.[1] The motion, submitted for consideration on October 26, 2022, is before the Court on the briefs without oral argument. For the reasons that follow, the motion is GRANTED.[2]

### I.   Background

Bright was employed at the St. James Parish Jail until he was terminated on April 21, 2020. Bright alleges that his termination violated the Americans with Disabilities Act ("ADA"), the First Amendment, and procedural and substantive due process. Bright later added a claim for retaliation, and abandoned/withdrew the due process claims.

---

[1] All of the plaintiff's pleadings identify him as "Cardell" Bright in the caption, and this is the name used in the official court record. It is now clear, however, that the plaintiff's actual first name is "Carvell." The Court will refer to the plaintiff throughout this Order and Reasons as simply "Bright."

[2] Bright has requested oral argument contending that the subject matter of the case is "tricky" and the facts of the case are "potentially elusive" (Rec. Doc. 78, Request for Oral Argument), contentions that the defendant vehemently denies (Rec. Doc. 80, Opposition to Request for Oral Argument). Defendant's position is that the case is neither tricky nor elusive but rather just simply frivolous.
    The Court has allowed a significant amount of briefing in this case, which has been pared down by prior motion practice to a single claim. The Court is not persuaded that oral argument would be beneficial.

(Rec. Doc. 48, Order and Reasons at 2 n.2). Willy J. Martin, the Sheriff of St. James Parish, was at all relevant times Bright's employer. The Sheriff is not alleged to have been personally involved in any of the events giving rise to the lawsuit except that the Sheriff was the final decisionmaker with respect to terminating Bright's employment.

The Court previously granted the Sheriff's motion for partial summary judgment on the § 1983 claims asserted against him (including the retaliation claim) leaving only Bright's ADA claim, which had not been challenged in the prior two motions for partial summary judgment. (Rec. Doc. 68, Order and Reasons). The specific type of ADA discrimination that Bright claims is the failure to accommodate—Bright's ADA claim does <u>not</u> involve allegations of discriminatory termination or the allegation that a disability played a role in the decision to terminate him.[3]

Bright's original complaint, first amended complaint, and second amended

---

[3] As pleaded, Bright's Count 2 ADA claim reads as follows:

> Plaintiff alleges that he was terminated in violation of his rights under the ADA in that termination for alleged job abandonment was a failure to reasonably accommodate him.

(Rec. Doc. 26, Second Supplemental and Amended Complaint ¶ 29).

In his opposition, Bright confirms that his ADA claim is only for the failure to accommodate and that he is not claiming disability discrimination, *i.e.*, that he was terminated because of his alleged disability or treated any differently than other employees on account of his alleged disability. (Rec. Doc. 76, Opposition at 25); (Rec. Doc. 70-9, Bright's Answers to First Set of Interrogatories ¶ 6).
In fact, Bright's contention throughout this litigation has been that the real reason that he was terminated was because Warden Washington was bitter and jealous over Bright's romantic relationship with another jail employee, and therefore convinced the Sheriff that Bright should be terminated for ostensibly valid reasons, *i.e.*, leaving his post before his relief arrived, which did in fact occur. Even if it was Chief Berthelot who recommended that the Sheriff fire Bright, Bright believes that Berthelot had him fired because he had complained about Warden Washington. (Rec. Doc. 70-7, Bright deposition at 94). But none of these petty squabbles are pertinent to the ADA failure to accommodate claim.

complaint are replete with detailed factual allegations describing his time as an employee at the jail. When Bright was hired in April 2015, he had a medical problem with his bowels, was recovering from rectal surgery, and was diabetic. (Rec. Doc. 1, Complaint ¶ 6). Bright's diabetes is sensitive to stress, which causes low blood sugar, and ultimately diarrhea. (*Id.*). When Bright experiences diarrhea his rectum becomes extremely sore and relief can only be obtained by sitting in a tub of cold water. (*Id.* ¶ 7).

Bright alleges that he endured undue stress at the jail because of his romantic relationship with Ms. Raquel Banks, who was employed at the jail as a corrections officer. (*Id.* ¶ 5). Ms. Banks and Bright later became engaged. Bright alleges that Warden Washington was likewise enamored with Ms. Banks and so began to harass Bright in numerous ways, escalating his stress. On April 14, 2020, because of Washington's harassment, Bright's diabetes got out of control and he called in sick. (*Id.* ¶ 15). Bright came back to work two days later on Thursday, April 16, 2020, even though his rectum was "flared up," and he was going back and forth to the bathroom. (*Id.* ¶¶ 19, 22).

On the morning of April 16, 2020, Bright was the ranking officer at the jail (sergeant) and he was the only supervisory officer present onsite. The Sheriff's written policy is that "[n]o deputy shall absent himself without proper leave." (Rec. Doc. 70-5 at 20). Bright left early that day, he alleges with permission, but was nonetheless terminated for abandoning his job.[4] (*Id.* ¶ 27). It is undisputed that Bright was not terminated for leaving early that day—he had spoken to Lt. McKarry and had permission to leave early for medical reasons but she told Bright to call Mr. Falgoust to ask him to

---

[4] Whether Bright had permission to leave before his relief arrived is a disputed issue of fact but as explained later it is not material to the ADA failure to accommodate claim.

come to the jail to relieve Bright—but Bright left *before* his relief arrived, which means that he left the jail with no supervisory officer on the premises. Bright later admitted that he knew this was wrong. The Shift Sergeant Post Order Guidelines provide that it was Bright's responsibility to "provide supervision of subordinate staff and inmates." (Rec. Doc. 70-5 at 26). Another responsibility was to "[c]onvey to the oncoming Shift Sergeant all necessary information, instructions and a synopsis of your tour of duty occurrences." (*Id.* at 30). The security of the inmates and co-workers was Bright's responsibility. (*Id.*).

Chief Sid Berthelot is the individual alleged to have terminated Bright's employment.5 (Complaint ¶ 27, First Supp. & Amended Comp. ¶ 27, Second Supp. & Amended Comp. ¶ 27).

A jury trial was scheduled for November 7, 2022 but the Court granted Plaintiff's unopposed motion to continue trial and certain other deadlines. (Rec. Doc. 66, Order). The Court held two status conferences with counsel. (Rec. Docs. 69 & 75, Minute Entries). No trial date is scheduled at this time but the Court advised that a status conference would be scheduled if the instant motion for summary judgment was denied. (Rec. Doc. 75, Minute Entry 9/15/22).

Via his motion for summary judgment, the Sheriff argues that Bright has failed to

---

5 Although Bright alleged that Berthelot terminated him the Sheriff confirmed that he made the decision to terminate Bright albeit pursuant to a recommendation from either Berthelot or Major Claude Louis. (Rec. Doc. 70-6, Exhibit B deposition at 34). Only the Sheriff had the authority to terminate Bright's employment. (Rec. Doc. 76-3, Louis declaration ¶ 7). The termination came one day after Major Louis interviewed Bright as part of an Internal Affairs investigation into Bright's departure on April 16, 2020, which occurred before he had been properly relieved. The audio recording of the interview and the transcript have been provided as exhibits to the Sheriff's motion for summary judgment. (Rec. Docs. 70-5, Exhibits A-1 & A-2).

bring a valid claim under the ADA and that summary judgment should be granted in his favor, dismissing Bright's complaint with prejudice. The parties' contentions are addressed below.

## II. Discussion

Bright's theory of the case for his ADA failure to accommodate claim is as follows: His disability is rectal distress in the aftermath of four rectal surgeries that occurred about 20-25 years ago. (Rec. Doc. 70-9, Answers to First Set of Interrogatories ¶ 3). At times he suffers from "severe diarrhea and disabling aggravation of his bowels" causing his rectum to "flare up." (*Id.*). According to Bright *at the time he was terminated* he was disabled due to the foregoing medical issues.[6] The specific accommodation that Bright claims is at issue is a one-time request for emergency medical leave to leave the jail immediately and before his relief arrived. Bright posits that the request was reasonable (and concomitantly would not have been an undue hardship) because of what he contends was a widespread and de facto policy of allowing coverage "gaps" at the jail in the past.

The ADA (Americans with Disabilities Act) prohibits an employer from discriminating against a "qualified individual with a disability on the basis of that disability." *EEOC v. LHC Group, Inc.*, 773 F.3d 688, 694 (5th Cir. 2014) (quoting 42 U.S.C. § 12112(a)). The Act defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). The

---

[6] The evidence demonstrates that Bright has had no problems whatsoever with his allegedly disabling condition(s) post-termination. Bright stresses that the proper time frame, and the only relevant timeframe under the controlling law, is whether he was disabled for ADA purposes at the time that the Sheriff terminated him. Therefore, according to Bright, his work history after leaving the Sheriff is irrelevant.

statute also allows for suits by plaintiffs who though not actually disabled per the definition are "regarded as having such an impairment." *Id*. § 12102(1)(C). A "qualified individual" means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.[7]  42 U.S.C. § 12111(8).

Discrimination under the ADA includes "***not making reasonable accommodations*** to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." *Amedee v. Shell Chem., L.P.*, 953 F.3d 831, 837 (5th Cir. 2020) (citing § 12112(b)(5)(A) (emphasis added)). This type of ADA discrimination claim is referred to as a "failure to accommodate" claim. The elements of an ADA failure to accommodate claim are that 1) the plaintiff is a qualified individual with a disability, 2) the disability and its consequential limitations were known by the employer, and 3) the employer failed to make (denied) reasonable accommodations for such known limitations. *Thompson v. Microsoft Corp.*, 2 F.4th 460, 467 (5th Cir. 2021) (citing *Moss*, 851 F.3d at 417).

Notably, the enumerated elements above do not include proof of an adverse employment action, such as a demotion or a termination—an adverse employment action of this nature is not a required element of an ADA failure to accommodate claim.

---

[7] The Fifth Circuit has previously explained the importance of distinguishing between an employer's knowledge of an employee's disability versus an employer's knowledge of any *limitations* experienced by the employee as a result of that disability. *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 164 (5th Cir. 1996). The distinction is important because the ADA requires employers to reasonably accommodate limitations not disabilities. *Id.*

Rather, a failure to accommodate claim provides a mechanism to combat workplace discrimination even when the employee in question has not suffered an adverse employment action.[8] *EEOC v. LHC Group, Inc.*, 773 F.3d 688, 703 n.6 (5th Cir. 2014). The "adverse" conduct by the employer that triggers an ADA failure to accommodate claim is the employer's denial of the employee's reasonable accommodation request. *See Windhauser v. Board of Supv. for La. State Univ.*, 360 Fed. Appx. 562, 566 (5th Cir. 2010).

The "reasonableness" of the requested accommodation is a crucial part of the plaintiff's prima facie case and therefore he bears the burden of proof as to reasonableness. *Riel v. Electronic Data Sys. Corp.*, 99 F.3d 678, 683 (5th Cir. 1996). In making a reasonable accommodation the ADA requires employers to make "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position . . . ." *LHC Grp.,* 773 F.3d at 698 (citing 29 C.F.R. § 1630.2(*o*) (1)(ii)). But "[t]he ADA does not require an employer to relieve an employee of any essential functions of his or her job, modify those duties, reassign existing employees to perform those jobs, or hire new employees to do so." *Id.* (citing *Burch v. City of Nacogdoches,* 174 F.3d 615, 621 (5th Cir.1999)).

An implicit requirement of the plaintiff's prima facie case for a failure to

---

[8] This stands in stark contrast to an ADA discriminatory termination claim which only accrues as an actionable cause of action if the plaintiff was subject to an adverse employment decision (on account of his disability). *See, e.g., Clark v. Champion Nat'l Security, Inc.*, 952 F. 3d 570, 582 (5th Cir. 2020) (citing *Moss v. Harris Cty. Constable Precinct One*, 851 F.3d 413, 417 (5th Cir. 2017)).

accommodate claim is that he demonstrate that he actually requested the accommodation that he claims to have been denied. So the plaintiff must demonstrate not only that the accommodation at issue is reasonable but also that he requested it. *Clark*, 952 F.3d at 587 (citing *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007)). After all, if the employee fails to request an accommodation the employer cannot be held liable for failing to provide it. *Id.* at 587 n.71 (citing *Taylor*, 93 F.3d at 165).

When the employee does request an accommodation, the employer is required under the ADA to engage in the interactive process, which is intended to be a meaningful dialogue so that together the employer and employee can determine what reasonable accommodations might be available to accommodate the employee's disability. *EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir. 2009) (citing *Tobin v. Liberty Mut. Ins. Co.*, 433 F.3d 100, 108 (1st Cir. 2005)). When the employer does not engage in a good faith interactive process, that employer has violated the ADA—including when the employer discharges the employee instead of considering the requested accommodation. *Id.* (citing *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005)).

Assuming that the plaintiff has satisfied all of the elements of his prima facie case for the failure to accommodate, the burden then shifts to the employer to demonstrate that the requested reasonable accommodation would impose an undue hardship on the operation of the employer's business. *Chevron Phillips Chem.*, 570 F.3d at 614 (citing 42 U.S.C. § 12112(b)(5)(A)). The term "undue hardship" means an action requiring significant difficulty or expense, when considered in light of factors such as the type of operation or operations of the covered entity, including the composition, structure, and

functions of the workforce of such entity; the geographic separateness, administrative, or fiscal relationship of the facility or facilities in question to the covered entity. 42 U.S.C. § 12111(10)(A)-(B)(iv).

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (*citing Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (*citing Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (*citing* Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (*citing SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

When faced with a well-supported motion for summary judgment, Rule 56 places the burden on the non-movant to designate the specific facts in the record that create genuine issues precluding summary judgment. *Jones .v Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996). The district court has no duty to survey the entire record in search of evidence to support a non-movant's position. *Id.* (citing *Forsyth v.*

*Barr*, 19 F.3d 1527, 1537 (5th Cir. 1992); *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988)).

At the outset the Court must disabuse both sides of the mistaken belief that certain disputed issues of fact have any bearing on the summary judgment analysis for Bright's failure to accommodate claim. The question whether Bright had permission to leave before his relief arrived on April 16, 2020 is not material to the ADA failure to accommodate claim. To defeat summary judgment, Bright relies heavily on the permission issue, and he even continues to seek discovery from the jail's telephone provider to support his (thus far unsupported) contention that he spoke with Lt. McKarry twice on the morning of April 16, 2020, the significance of the second call being that McKarry allegedly gave Bright permission to leave before Falgoust arrived to relieve him. Bright even questions whether someone might have gone so far as to alter the phone logs at the jail's control center so that there is no record of a second call between Bright and McKarry. (Rec. Doc. 76-6, Exhibit 4 Chabaud deposition).

Assuming solely for the sake of argument that Bright was told that he could leave before his relief arrived, he was nonetheless terminated for it. The failure to accommodate claim is premised on the theory that a reasonable accommodation would have been to allow Bright to leave before his relief arrived but when he did that he was fired for it. What McKarry may or may not have told Bright in a second phone call, including allegedly giving Bright permission to leave immediately, is not relevant to any aspect of the failure to accommodate claim. Whether Bright was treated too harshly by being fired and whether the termination was unfair are simply not relevant to the failure

to accommodate claim.[9]

Similarly, the Sheriff's strong desire to demonstrate that Bright was justifiably terminated for non-discriminatory reasons is understandable but justification for the termination is immaterial to the ADA failure to accommodate claim. The termination itself is only material to the ADA failure to accommodate claim insofar as it constitutes a firm and unequivocal denial of the request to leave before relief arrived (assuming that such a request was even made). Bright has never alleged that he was the victim of disability discrimination. And even though the ADA does not immunize employees for

---

[9] Even as to Bright's second phone contention, Bright's own testimony demonstrates that it is a mischaracterization to now claim that he was given permission to leave immediately. In his deposition Bright stated that when he spoke to McKarry, "***she didn't tell me directly***, but when she said that [] ***take care of yourself***, that give me the rights to leave and go home and take care of myself." (Rec. Doc. 84-1, Reply Exhibit A Bright deposition at 79) (emphasis added). When Major Louis asked Bright point blank at his post-incident interview whether any supervisor had told him to leave with no supervisory personnel onsite, Bright responded, "[McKarry] was to the point to where you know ***call [Falgoust] and tell him to come out, now she didn't say nothing,*** but like I said I ain't going to lie. I know I did leave because I know I was hurting, I did leave. I can say that." (Rec. Doc. 70-5, Exhibit A-1 at 18) (emphasis added).
    Thus, Bright's own testimony fails to suggest that McKarry ever expressly authorized him to leave before his relief arrived. What Bright argues is that by saying "take care of yourself" McKarry was indicating that he could leave immediately. Whether Bright reasonably interpreted what McKarry said to him on the phone is not relevant to the ADA failure to accommodate claim. The reference in Major Louis's Second Declaration to what McKarry allegedly told Bright is inadmissible hearsay within hearsay. (Rec. Doc. 76-3, Exhibit 1).
    And even if Bright had permission to leave without relief on April 16, 2020 but it was later revoked implicitly when the Sheriff decided to terminate Bright, that would not matter because it is undisputed that Bright was an at-will employee. (Rec. Doc. 30-4 at 3, Exhibit A-1). Thus, under Louisiana law he could be dismissed at any time for any reason. *Hayes v. Univ. Health Shreveport, LLC*, 332 So. 3d 1163, 1168-69 (La. 2022) (citing La. Civ. Code art. 2747). Of course, an employer's right to terminate an at-will employee is "tempered by numerous federal [] laws which proscribe certain reasons for dismissing an at-will employee. *Hayes*, 332 So. 3d at 1169 (citing *Quebedeaux v. Dow Chem. Co.*, 820 So. 2d 542, 545 (La. 2002)).
    But again, the issue of permission is not material to the ADA failure to accommodate claim.

being fired due to poor performance, in this case the "poor performance" that led to Bright's termination just so happens to be the specific "accommodation" that his failure to accommodate claim is based upon, *i.e.*, leaving immediately before supervisory relief could arrive at the jail.

Immaterial issues aside, the Sheriff has challenged Bright's ADA claim on numerous potentially meritorious grounds, including disability status. For purposes of summary judgment only, the Court assumes that the bowel ailment that Bright had on April 16, 2020, constituted a disability under the ADA.

But as explained earlier, the ADA requires reasonable accommodations for limitations not disabilities, and part of Bright's prima facie case is to demonstrate not only that he had limitations due to his disability but also that the Sheriff knew about the limitations. The Court is not certain what the specific limitations pertaining to the bowel ailment were except that Bright had to use the bathroom frequently and his rectum would become inflamed causing much discomfort until he could soothe himself in a tub of water. The Court questions whether the need to use the bathroom frequently and to soothe a sore anus constitute *limitations* that the Sheriff would have been required to accommodate under the ADA by allowing Bright to leave immediately without relief having arrived. Anyone understands that when intestinal distress sets in the best place to be is at home, and Bright was given permission to go home. In fact, the Sheriff and his staff had accommodated Bright in this manner numerous times in the past but until April 16, 2020 Bright had never left before his relief arrived. If the impairment is using the bathroom itself then there were toilets at the jail that Bright could have used until Falgoust arrived (in fact, Bright used the bathroom at a grocery store on the way home that morning). And if the impairment was a sore rectum that was in need of a soak then

Bright surely could have waited a few minutes to let his relief arrive before he left the jail unsupervised that morning.

In order to cast his conduct in a less negative light Bright has pointed out that he left that morning knowing that his relief was heading in and would arrive shortly but that begs the question of why Bright couldn't wait just a little while longer for his relief to arrive before leaving, which he knew was wrong. For purposes of summary judgment only, the Court assumes that that the bowel ailment that Bright had on April 16, 2020, not only constituted a disability under the ADA but that it had consequential limitations known to the Sheriff that leaving the jail immediately without relief would address.

Unfortunately, however, even making all of the foregoing assumptions in favor of Bright, his failure to accommodate claim still fails for several reasons. One salient problem with Bright's case is that there is no evidence that he actually requested the accommodation that he is suing upon. Bright never testified that he actually asked McKarry if he could leave immediately; even in his version of events surrounding "permission" Bright merely interpreted McKarry's alleged "take care of yourself" comment as authorization to leave work immediately before Falgoust arrived. But nowhere does Bright suggest or even imply that he actually asked McKarry if he could leave immediately without his replacement having arrived.[10]

---

[10] What McKarry may or may not have told Bright in any phone call is rendered even more immaterial because Bright was not terminated immediately upon it having been discovered that he left before his relief arrived. Instead Bright was fired after an investigative hearing conducted by Major Louis so that appropriate discipline for Bright's infraction could be determined. Going into the April 20, 2020 investigative hearing interview with Major Louis, it was not a foregone conclusion that Bright would be terminated for what happened on April 16, 2020. In fact, Major Louis stated that he had recommended a three-day suspension and he did not know why the Sheriff "overrode" his recommendation and opted to fire Bright. (Rec. Doc. 76-3, Exhibit 1 ¶¶ 6, 7).

But as noted above, Bright wasn't immediately fired on April 16, 2020—it occurred several days later following an investigative hearing where he was allowed to tell his version of what happened on April 16, 2020. Nowhere in the transcript (or recording of that interview) does Bright make a request for a retroactive accommodation to leave immediately without being relieved, or even re-urge a prior request for such an accommodation. In fact, in his deposition Bright repeatedly denied that he had ever requested an accommodation for any of his health issues. (Rec. Doc. 70-7, Bright deposition at 59). It is clear that Bright never asked for the specific accommodation upon which he now sues.

And while Bright had been trying to speak with the Sheriff before being terminated, he sought that meeting in order to tell the Sheriff about what Warden Washington had been doing to him. (Rec. Doc. 84-1, Exhibit A Bright deposition at 118). Bright did not seek that meeting with the Sheriff in order to ask for a reasonable accommodation for a disability.

Given that there is no evidence that Bright actually requested the accommodation to leave before relief arrived on April 16, 2020, his ADA failure to accommodate claim in this lawsuit is actually an after-the-fact request for an exception to the Sheriff's written policies regarding leave and supervision at the jail. But as explained in *Clark*, 952 F.3d at 587 (citing *Moss*, 851 F.3d at 418 n.2), this is not an accommodation under the ADA.

But even aside from the problem of having not requested the accommodation at issue, Bright's accommodation would have entailed relieving him of the requirement of being on site supervising at the jail which was an essential function of his job. An essential function of Bright's job as a supervisory corrections officer was to be physically present at the jail where the inmates are housed. Bright's job was not one that could be

done remotely. So the accommodation that Bright seeks, which was to be relieved of an essential function of his job (being physically present) that someone else would then be asked to perform (his relief), is not one that the ADA would require the Sheriff to provide.

But finally, and perhaps most fatally, Bright has not established that a reasonable accommodation for his limitations (whatever they might be) would be to leave the jail with no supervisory officer on the premises. Bright was supervising two relatively new corrections officers at the time. The Sheriff testified as to the potential problems with having no supervisory person at the jail, which of course houses inmates for whom the Sheriff is responsible. (Rec. Doc. 70-6, Martin deposition at 36). The Sheriff considered it a dangerous situation. (*Id.* at 37). The jail was already short-handed of staff and with Bright leaving suddenly it disrupted the level of jailers that the Sheriff tries to maintain to fulfill the responsibility of care and custody of the inmates. (*Id.* at 36).

The fact that in hindsight there were no problems with the inmates during the time that Bright left the jail unsupervised might be indicative of luck but it does not point in favor of reasonableness. In that vein, Bright's argument that there had been coverage gaps in the past at the jail does not make his accommodation any more reasonable. While the Court is persuaded that the accommodation that was undisputedly offered—allowing Bright to leave early once his relief arrived—was reasonable, it is patently unreasonable to suggest that the Sheriff was required to leave the staff and inmates unsupervised in order to accommodate Bright's desire to soak his inflamed rectum sooner rather than later.

In sum, the Sheriff is entitled to judgment as a matter of law on Bright's ADA failure to accommodate claim.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 70)** filed by the defendant, Willy J. Martin, Sheriff of St. James Parish, is **GRANTED**. The plaintiff's complaint is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that the **Motion for Leave to File a Surreply (Rec. Doc. 87)** filed by the plaintiff is **GRANTED**.[11]

November 4, 2022

JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE

---

[11] The Court will allow Bright's surreply to be filed into the record even though it has been filed more than a week after the submission date for the Sheriff's motion, which was originally filed back in August and continued at Bright's request. (Rec. Doc. 74, Order). Nothing contained in the surreply persuades the Court that summary judgment should be denied.